Jordan L. Lurie  (130013)
jlurie@weisslurie.com
Zev B. Zysman (176805)
zzysman@weisslurie.com
Joel E. Elkins (256020)
jelkins@weisslurie.com
**WEISS & LURIE**
10940 Wilshire Boulevard, 23rd Floor
Los Angeles, CA 90024
Telephone:   (310) 208-2800
Facsimile:    (310) 209-2348

*Attorneys for Plaintiff and
the Proposed Class*

Rick L. Shackelford (151262)
shackelfordr@gtlaw.com
Daniell K. Newman (242834)
newmandk@gtlaw.com
**GREENBERG TRAURIG, LLP**
2450 Colorado Avenue, Suite 400E
Santa Monica, California  90404
Telephone:   (310) 586-7700
Facsimile:    (310) 586-7800

*Attorneys for Defendant
Welch Foods, Inc*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYAM BURCHAM, on Behalf of Herself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>WELCH FOODS, INC.,<br><br>     Defendant.<br><hr>CONSOLIDATED WITH<hr>SEANN P. COURTNEY,<br><br>     Plaintiff,<br>v.<br><br>WELCH FOODS, INC., et al.,<br><br>     Defendants. | Case Nos. CV 09-05946 AHM (AGRx)<br><br>consolidated with<br><br>SA CV10-01427-AHM (AGRx)<br><br>**PUTATIVE CLASS ACTION**<br><br>**MEMORANDUM IN SUPPORT OF RENEWED JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE**<br><br>Date:  March 7, 2011<br>Time:  10:00 a.m.<br>Ctrm:  14<br>Judge:  Hon. A. Howard Matz |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

I.   INTRODUCTION ...................................................................................1

II.  PROCEDURAL HISTORY ....................................................................3

III. OVERVIEW OF THE PROPOSED SETTLEMENT.............................5

    A.   Settlement Class ..........................................................................5

    B.   Cash Refunds...............................................................................5

    C.   Product Replacements .................................................................5

    D.   Coupons .......................................................................................6

    E.   Charitable Food Donations ..........................................................6

    F.   Payment of Attorneys' Fees and Costs to Class
        Counsel and Service Payment to Class Representative ......................7

    G.   The Proposed Class Notice Program............................................7

        1.   Settlement Website ...........................................................8

        2.   Newspaper Inserts ............................................................9

            a.   Notice Coupon .......................................................9

            b.   Settlement Coupon .................................................9

IV.  CERTIFICATION OF THE SETTLEMENT CLASS
    IS WARRANTED ...................................................................................10

    A.   Numerosity ..................................................................................11

    B.   Commonality ...............................................................................12

    C.   Typicality.....................................................................................13

    D.   Fair and Adequate Representation ..............................................14

    E.   Common Questions of Law and Fact Predominate
        Over Any Questions Affecting Only Individual Members,
        And A Class Action Is Superior To Other Methods of
        Adjudication ................................................................................15

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

         1.     Common Questions Predominate Over Individual Issues   16

         2.     A Class Action is the Superior Method to Settle This Controversy.....................................................16

V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED .........................................................18

    A.   Standard for Preliminary Approval of Settlement ..............................18

    B.   The Proposed Settlement Is Within the Range of Possible Approval...............................................................20

VI.   THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE AND CLASS NOTICE SHOULD BE APPROVED .........................................................24

VII.  THE FINAL SETTLEMENT HEARING.....................................27

VIII. PROPOSED SCHEDULE OF EVENTS .....................................22

IX.   CONCLUSION.........................................................29

ii

# TABLE OF AUTHORITIES

**CASES**                                                                 **Pages**

*Alberto v. GMRI, Inc.*
  252 F.R.D. 652 (E.D. Cal. 2008) ................................................................32

*Blackie v. Barrack*
  524  F.2d 895 (9th Cir. 1975) ...................................................................14

*In re Blech Sec. Litigation*
  187 F.R.D. 97 (S.D.N.Y. 1999) ................................................................12

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992) .................................................................18

*In re Compact Discount Minimum Advertised Price Antitrust Litigation*
  216 F.R.D. 197 (D. Me. 2003) .................................................................26

*Cotton v. Hinton*
  559 F.2d 1326 (5th Cir. 1977) .................................................................20

*Deposit Guaranty National Bank v. Roper*
  445 U.S. 326 (1980) ...............................................................................17

*Dukes v. Wal-Mart, Inc.*
  509 F.3d 1168 (9th Cir. 2007) ........................................................ *passim*

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974) ...............................................................................24

*Ellis v. Costco Wholesale Corp.*
  240 F.R.D. 627 (N.D. Cal. 2007) .............................................................12

*General Telegraph Co. of Southwest v. Falcon*
  457 U.S. 147 (1982) ...............................................................................16

*Hanlon v. Chrysler*
  150 F.3d 1011 (9th Cir. 1998) ........................................................ *passim*

*Korn v. Franchard Corp.*
  456 F.2d 1206 (2d Cir. 1992) .................................................................12

*Local Joint Exec. Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
  244 F.3d 1152 (9th Cir. 2001) .................................................................15

*In re Mercury Interactive Corp. Sec. Litigation*
  2010 WL 3239460 (9th Cir. Aug. 18, 2010) .............................................26

iii

1

2

**TABLE OF AUTHORITIES CON'T.**

3

**CASES**                                                                    **Pages**

4

*Molski v. Gleich*
   318 F.3d 937 (9th Cir. 2003) .................................................................11

5

*Mullane v. Central Hanover Bank & Trust Co.*
   339 U.S.  306 (1950) ............................................................................24

6

7

*National Rural Telecomms. Cooperative v. DIRECTV, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................23

8

*Negrete v. Allianz Life Insurance Co. of N. America*
   238 F.R.D. 482 (C.D. Cal. 2006) ..........................................................14

9

10

*Nelson v. Bennett*
662 F. Supp. 1324 (E.D. Cal. 1987) .........................................................19

11

*Officers for Justice v. Civil Serv. Commission*
   688 F.2d 615 (9th Cir. 1982) ...........................................................18, 19

12

13

*Rosario v. Livaditis*
   963 F.2d 1013 (7th Cir. 1992) ..............................................................14

14

*Simpson v. Fireman's Fund Insurance Co.*
   231 F.R.D. 391 (N.D. Cal. 2005) ..........................................................14

15

16

*Trief v. Dun & Bradstreet Corp.*
   144 F.R.D. 193 (S.D.N.Y. 1992) ...........................................................12

17

*Valentino v. Carter-Wallace, Inc.*
   97 F.3d 1227 (9th Cir. 1996) ................................................................12

18

19

*Van Bronkhorst v. Safeco Corp.*
   529 F.2d 943 (9th Cir. 1976) ................................................................18

20

*In re Wireless Facilities, Inc. Sec. Litigation II*
   253 F.R.D. 607 (S.D. Cal. 2008) ...........................................................10

21

22

*Zinser v. Accufix Research Institute, Inc.*
   253 F.3d 1180 (9th Cir. 2001) ..............................................................19

23

24

**STATE CASES**

25

*In re Ashanti Goldfields Securities Litigation, No. CV 00 0717(DGT)*
   2004 WL 626810 (E.D.N.Y. Mar. 30, 2004) .................................................11

26

*Browder v. Fleetwood Enterprises, Inc., No. ED CV 07-01180 SGL*
   2008 WL 4384245 (C.D. Cal. 2008) ............................................................13

27

28

iv

# TABLE OF AUTHORITIES CON'T.

**CASES**                                                                   **Pages**

*Colesberry v. Ruiz Food Products, Inc.*, No. CV F 04-5516
2006 WL 1875444 (E.D. Cal. June 30, 2006) ...............................................13

*Hughes v. Microsoft Corp.*
No. C98-1646C, C93-0178C, 2001 WL 34089697(W.D. Wash. 2001) .......24

*In re NVIDIA Corp. Deriv. Litigation*
No. C-06-06110-SBA, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008).........18

*State of California v. Levi Strauss & Co.*
41 Cal. 3d 460 (1986) ......................................................................................6

*Vasquez v. Superior Court*
4 Cal. 3d 800 (1971) ......................................................................................17

## DOCKETED CASES

*Courtney v. Welch's Foods, Inc.*
Case No. CV-10-1427-AHM (C.D. Cal. Sept. 21, 2010)................................4

*Pom Wonderful LLC v. Welch Foods, Inc.*
Case No. 09-cv-00567 ...................................................................................21

*Rojas v. Welch Foods, Inc.,*
Case No. 10-10-81468-DIMITROULEAS (S.D. Fla. Sept. 29, 2010) ..........5

## FEDERAL STATUTES

Class Action Fairness Act, 28 U.S.C. §1715 ......................................................27

Fed. R Civ. P.
23(a) ..............................................................................................................11
23(a)(1) ....................................................................................................11, 12
23(a)(2) ....................................................................................................12, 13
23(b) ..............................................................................................................11
23(b)(3) .................................................................................................. *passim*
23(c)(2) ..........................................................................................................27

## STATE STATUTES

Cal. Bus. & Prof. Code
§17200 .............................................................................................................3
§17500 .............................................................................................................3

v

1

## OTHER AUTHORITIES

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Federal Practice & Procedure
　　§1777……………………………………………………………………..16

Manual for Complex Litigation
　　§ 21.63 ...............................................................................18
　　§ 21.632 ............................................................................19

vi

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Welch Foods, Inc. ("Welch's") and Plaintiff Maryam Burcham (collectively, the "Parties") respectfully request preliminary approval of the proposed settlement of this class action.[1]  After extensive negotiations, including a Rule 16(b) Scheduling Conference on October 16, 2010 before this Court, at which time the basis and framework of the settlement terms and proposed notice provisions were presented, the Parties have reached a nationwide settlement as memorialized in the concurrently filed Stipulation.

In sum, the Stipulation provides monetary relief and non-monetary relief for Class members who purchased Welch's 100% Juice White Grape Pomegranate flavored juice blend (the "WGP Product") during the Settlement Class Period.  The settlement provides Class Members with the following: (1) full cash refunds of the retail purchase price paid by Class Members for each WGP Product, without any limitation on the number of refunds, with proper proof of purchase; or (2) a coupon for a free replacement product redeemable for any Welch's 100%, 64 ounce juice product, with a limit of one coupon per household, offered until the number of replacement coupons equals 15,000, simply by submitting a form under penalty of perjury, without any proof of purchase.  The claims procedure is streamlined and not onerous.

In addition to the foregoing relief, the Settlement also provides benefit to the public generally.  Welch's has agreed to provide discount  coupons toward one of various Welch's 100% Juice or juice cocktail products, without any proof of

---

[1] All capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement (the "Stipulation").

1  discount product coupons, which are available to all consumers, not just Class

2  Members, will be distributed via Free Standing Inserts ("FSI") in Sunday

3  newspapers nationwide, with a combined circulation of at least 20 million and

4  offered twice.  The total value Welch's is committing to honor through these

5  coupons will be not less than $30 million.

6        Finally, Welch's also has agreed to make product donations of a combination

7  of food and juice products to charitable organizations of not less than $350,000.

8  Since Welch's discontinued and ceased production of the WGP Product when its

9  fiscal year ended on August 31, 2010, there is no possibility for injunctive relief.

10        Welch's will separately pay for the costs of notice and claims administration.

11   In addition, Class Counsel will make an application for a fee and expense award of

12  an amount not to exceed  $1,250,000; Welch's has not agreed to the propriety of an

13  award in excess of $450,000 and has reserved the right to object to an amount in

14  excess of that amount.  The attorney fee and expense amount to be  paid by

15  Welch's will be separate and apart from the Settlement.  Moreover, Welch's has

16  agreed to a modest incentive award in the amount of $2,500 to the Lead Plaintiff.

17        The Settlement parties respectfully submit that the proposed Settlement is

18  fair, reasonable and adequate and warrants preliminary approval by this Court.

19        Accordingly, the Parties jointly seek an Order which: (1) preliminarily

20  approves the Class settlement; (2) certifies the settlement Class for the purpose of

21  effectuating the settlement; (3) approves the form and method of notice of the

22  settlement and of the pendency of the litigation to the Class and order that such

23  notice be given; (4) schedules a hearing for final approval of the settlement.  If

24  approved by the Court, the settlement will conclude this case between the Class and

25  Welch's.

26

27                                         2

28

**II.     PROCEDURAL HISTORY**

Welch's manufactured and marketed the WGP which was introduced into the market in mid-2007 and ceased production in August, 2010.  Plaintiff alleges that the juice product was composed of mostly white grape and apple juices and contained very little, if any, pomegranate juice.  Plaintiff further alleges that the labeling, packaging, advertising and marketing methods used by Welch's created the false and misleading impression that the product contains more pomegranate juice than it actually does, seeking to capitalize on consumers' desire for the health and nutritional benefits provided by pomegranate juice.

On August 14, 2009, Plaintiff filed a class action alleging that she and other members of the Class overpaid for the WGP in that they did not get the high quality juice they believed they were purchasing.

On December 7, 2009, this Court denied Defendant's motion to dismiss the complaint, and on December 30, 2009, Defendant filed its answer to the complaint.

On August 30, 2010, Plaintiff filed a motion to certify a class of all persons residing in California who purchased the Product between July 1, 2007 and the date of certification, excluding Defendant and related entities.  The motion was vacated to allow the parties an opportunity to engage in settlement negotiations.

On September 24, 2010, pursuant to the Parties' Stipulation, Plaintiff filed a proposed First Amended Complaint, alleging claims under Bus. & Prof. Code §§17200, *et seq.* ("UCL"), Cal. Bus. & Prof. Code §§17500, *et seq.* ("FAL"), Civil Code §1750, *et seq.* and breach of express warranty on behalf of a nationwide class of consumers.

On October 18, 2010, the Parties participated in a Rule 16 Conference before this Court.  During the Conference, the Parties discussed the purpose and effect of the changes in the proposed First Amended Complaint and the pendency of the

3

1   newly filed tag along cases (*i.e.*, *Courtney v. Welch's Foods, Inc.,* Case No. SACV-

2   10-1427-AHM (C.D. Cal. Sept. 21, 2010) and *Rojas* v. *Welch Foods, Inc.*, Case

3   No. 10-10-81468-DIMITROULEAS (S.D. Fla. Sept. 29, 2010) against Welch's

4   following the September 13, 2010 jury verdict in the *Pom Wonderful, LLC v. Welch*

5   *Foods, Inc.* case.  The Parties also provided the Court with a detailed overview of

6   the potential resolution of the *Burcham* Action, including the basis and framework

7   of the settlement terms and the proposed notice provisions.  During the Conference,

8   the Court granted the Stipulation to amend the Complaint, and ordered the First

9   Amended Complaint filed on that date.  Additionally, the Court ordered the Parties

10   to submit a joint motion for preliminary approval and scheduled a hearing date on

11   the motion for January 24, 2010.

12        On November 24, 2010, Plaintiff filed a motion to consolidate the originally

13   filed *Burcham* Action, Case No. CV-09-05946 AHM (AGRx), with the

14   subsequently filed *Courtney* Action, Case No. SACV-10-1427 AHM (AGRx).

15   That motion was denied on December 21, 2010.  On December 27, 2010, Plaintiff

16   filed a motion for reconsideration of the consolidation motion.1  On January 19,

17   2011, the Court denied the motion for reconsideration and ordered counsel for

18   Plaintiffs Burcham and Courtney, and Defendant Welch Foods, Inc. to meet and

19   confer and to enter into and file a stipulation that would be filed separately in both

20   cases, consolidating the two cases and appointing Weiss & Lurie as interim lead

21   plaintiffs' counsel.

22

23   ————————————————

24   1 Prior to and during the pendency of these motions, counsel for Burcham has been
     in contact with counsel for Courtney regarding the status of the negotiations and
25   the proposed settlement.  A copy of the draft proposed Stipulation has been
     provided to counsel for plaintiffs in the *Courtney* and *Rojas* action for their
26   comments.

27                                            4

28

1   On February 3, 2011, pursuant to the Court's order, the parties submitted a

2   joint stipulation to consolidate the *Burcham* and *Courtney* actions and to appoint

3   Weiss & Lurie as interim lead counsel.  Pursuant to that stipulation, Weiss & Lurie

4   has authority to conduct settlement negotiations and to enter into a settlement

5   agreement on behalf of Plaintiffs.  On February 4, 2011, the Court approved the

6   parties' proposed order.  In addition, the Court denied the parties' previously filed

7   joint motion for preliminary approval (Dkt. No. 68) as moot and instructed the

8   parties to refile the joint motion under the consolidated caption.

9   **III.    OVERVIEW OF THE PROPOSED SETTLEMENT**

10  The proposed settlement is the result of extensive arm's-length negotiations

11  between the parties spanning several months.   Under the terms of the Stipulation,

12  Welch's has agreed to settle the Class Members' claims on the following terms:

13      **A.    Settlement Class**

14  The Agreement provides for certification of a class pursuant to Fed. R. Civ.

15  Pro. 23(b)(3), consisting of all persons or entities in the United States who

16  purchased Welch's WGP Product, and not for resale to others, between July 1,

17  2007 and August 31, 2010.  Stipulation of Settlement, ¶14(c).

18      **B.    Cash Refunds**

19  Class Members who can provide an original store receipt as proof of

20  purchase will receive full cash refunds for all purchases so documented.  To obtain

21  the cash payment, Class Members need only fill out and submit a simple, straight-

22  forward Refund Claim Form where the claimant provides his or her name and

23  address and the number of products (any size) purchased during the Settlement

24  Class Period. Class Members must submit the Refund Claim Form (with

25  documentation) by July 31, 2011.  There is no limit on the number of refunds a

26  Class Member may receive, with proof of purchase.  The Refund Claim Forms can

27                                                          5

28

1   be downloaded and printed from a specially-created web site,

2   www.wgpomsettlement.com.  Stipulation of Settlement, ¶ (A).

3       **C.    Product Replacements**

4       Class members who purchased the WGP but do not have the original store

5   receipt will receive a coupon redeemable for a free bottle of any Welch's 100%, 64

6   ounce juice product.  In order to receive a replacement product coupon, Class

7   Members need only submit a Product Replacement Form where the claimant

8   provides his or her name and address and attesting that they purchased the WGP.

9   Class Members must submit the Replacement Claim Form (without any

10  documentation) by July 31, 2011.  Because the proof requirements for product

11  replacements are lower than for refund claims, the product replacement coupons

12  will be limited to one coupon per household, and will be offered either until July

13  31, 2011 or until the number of replacement coupons sent reaches 15,000.  The

14  Replacement Claim Forms can be downloaded and printed from

15  www.wgpomsettlement.com.  Stipulation of Settlement, ¶19(B).

16      **D.    Coupons**

17      In addition to the cash refunds and product replacement coupons, Defendant

18  will provide free discount coupons for its various products available to any

19  consumer whether or not a member of the Class.  These discount coupons will be

20  good toward a  a future purchase of one of Welch's various 100% juice products,

21  and will be disseminated to the public as part of the two class notices announcing

22  preliminary approval and final approval of the settlement.  Use of these coupons is

23  not limited to class members and will not preclude class members from being

24  eligible to apply for or receive cash refunds or product replacement coupons.  The

25  total value Welch's is committing to honor through these coupons is not less than

26  $30,000,000.  Stipulation of Settlement, ¶19(C).

27         6

28

1      **E.      Charitable Food Donations**

2      Given the dollar amount of an individual's claim and that notice costs could

3  quickly become prohibitively expensive relative to the level of participation, the

4  Parties agree that an element of *cy pres* relief also is a necessary and important

5  aspect of this settlement.  *See, e.g., State of California v. Levi Strauss & Co.*, 41

6  Cal. 3d 460,472 (1986) ("[W]ithout fluid recovery [*cy pres*], defendants may be

7  permitted to retain ill gotten gains simply because their conduct harmed a large

8  number of people in small amounts instead of small numbers of people in large

9  amounts.").

10      As a result, in addition to the direct relief detailed above,  Defendant agrees

11  to donate not less than $350,000 in Welch's branded food and juice  products to

12  charitable organizations within eighteen months following final approval of the

13  settlement.  Stipulation of Settlement,  ¶19(D).

14      **F.      Payment of Attorneys' Fees and Costs to Class**

15          **Counsel and Service Payment to Class Representative**

16      Class Counsel will make an application for a fee and expense award of an

17  amount not to exceed $1,250,000; Welch's has not agreed to the propriety of an

18  award in excess of $450,000 and has reserved the right to object to an amount in

19  excess of that amount.  The issue of attorneys' fees and costs was negotiated at

20  arm's length only after agreement was reached on all substantive terms of the

21  settlement.  Stipulation of Settlement, ¶ 20. Moreover, Welch's agrees to pay a

22  modest service payment to the Class Representative in the amount of $2,500,

23  subject to Court approval, in light of her willingness to devote the time and energy

24  to prosecuting this litigation and in representing the Settlement Class.  Stipulation

25  of Settlement, ¶ 21.

26

27                                                            7

28

1    **G.      The Proposed Class Notice Program**

2          The Parties have developed a notice program that reaches the maximum

3    number of class members practicable without subsuming the benefits of settlement

4    in the cost of notice.  Because the product is sold at retail stores, Welch's does not

5    have mailing addresses for the Class members.  Consequently, the notice program

6    focuses on disseminating notice through the internet and in Sunday newspaper

7    inserts throughout the United States (with circulation numbers exceeding 20

8    million), where Welch's typically advertised the Product.

9                    **1.      Settlement Website**

10         Welch's will set up a website specifically for purposes of this settlement

11   (www.wgpomsettlement.com).  The website will include information regarding the

12   case and the proposed settlement, will allow class members to print out claim forms

13   for either cash refunds or product replacement, and will inform Class Members

14   how to opt out of or object to the Settlement.  Stipulation of Settlement,

15   ¶20(A),(B).  In addition, Welch's will place on the front page of its primary

16   corporate website (www.welchs.com) a reference to the settlement website

17   accompanied by the following language:

18         Welch's has entered into a proposed class action settlement

19         concerning claims regarding the name and label of Welch's White

20         Grape Pomegranate Flavored juice blend.  For more information about

21         the proposed settlement, as well as hearings and court proceedings

22         regarding the proposed settlement, please click the button above to

23         visit www.wgpomsettlement.com.

24   Stipulation of Settlement, ¶20(A).

25

26

27

28                              **8**

1    Upon the final approval of the settlement in this action, Welch's will update

2    the settlement website to reflect this and the language on its corporate website will

3    be changed to:

4         Welch's has entered into a settlement with a class of plaintiffs over

5         claims regarding the name and label of Welch's White Grape

6         Pomegranate Flavored juice blend.  Consumers covered by the

7         settlement may be eligible for cash refunds or other benefits of the

8         settlement.  For more information about the settlement and eligibility

9         requirements, please click the button above to visit

10        www.wgpomsettlement.com or call toll-free 1-800-340-6870

11        weekdays between 9:00 a.m. and 4:00 p.m. Eastern.  Information on

12        that website will explain the settlement and the benefits it provides,

13        and also provide printable claim forms.

14   Stipulation of Settlement, ¶20(c).

15        **2.     Newspaper Inserts**

16             **a.     Notice Coupon**

17        On February 13, 2011, following preliminary approval of the settlement,

18   Welch's will give notice of the preliminary approval of the settlement in free

19   standing insert (an "FSI") in several Sunday newspapers throughout the United

20   States with a combined circulation of at least 20 million.  That notice will contain

21   substantially the following notice language:

22        A settlement has been reached in a Class Action lawsuit regarding

23        Welch's 100% Juice White Grape Pomegranate flavored 3 juice blend

24        from concentrate, purchased between July 2007 and August 31, 2010.

25        Consumers covered by the settlement may be eligible for cash refunds

26        or other benefits of the settlement.  For more information about the

27

28
                                      **9**

1   settlement, and eligibility requirements, visit

2   www.wgpomsettlement.com.  The Court-ordered notice and other

3   documents at this website will explain the settlement and eligibility

4   requirements.

5 The notice will be accompanied by discount coupons toward the purchase of

6 Welch's 100% Juice and other products, redeemable immediately by all consumers

7 even if not members of the class.  Stipulation of Settlement, ¶ 22(C).

8     **b.**  **Settlement Coupon**

9   If the court grants final settlement approval, Defendant will issue a second

10 notice on May 1, 2011, in another FSI to Sunday newspapers with a national

11 circulation of not less than 20 million, containing substantially the following

12 language:

13   A final settlement has been approved by the United States District

14   Court for the Central District of California in a class action lawsuit

15   regarding Welch's 100% Juice White Grape Pomegranate flavored

16   juice blend from concentrate.  Consumers covered by the settlement

17   may be eligible for cash refunds or other benefits of the settlement.

18   For more information about the settlement and eligibility

19   requirements, visit www.wgpomsettlement.com or call toll free 1-800-

20   340-6870 weekdays between 9:00 a.m. and 4:00 p.m. Eastern.  The

21   court orders and other documents posted on that website will explain

22   the settlement and the benefits it provides, and will also provide

23   printable claim forms.  The postmark deadline for the claim forms is

24   July 31, 2011.  This coupon is redeemable by all consumers even if

25   you are not a member of the class.

26

27

28           10

1     The notice will also be accompanied by discount coupons toward the

2  purchase of  Welch's 100% Juice and other products, redeemable immediately by

3  all consumers even if not members of the class.  Stipulation of Settlement, ¶22(E).

4     The settlement web site will be available to the public shortly after

5  preliminary approval and until the Opt Out deadline.  Accordingly, Class Members

6  who wish to submit claim forms – either for refunds and/or replacement products –

7  could do so even prior to final approval.

8  **IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED**

9     "Parties may settle a class action before class certification and stipulate that a

10  defined class be conditionally certified for settlement purposes."  *In re Wireless*

11  *Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citing *Molski v.*

12  *Gleich*, 318 F.3d 937 (9th Cir. 2003)).  For the purpose of conditionally certifying

13  the class for settlement purposes, the Court evaluates the relevant factors under

14  Rule 23:

15     (1)    the class is so numerous that joinder of all members is impracticable;

16     (2)    there are questions of law or fact common to the class;

17     (3)    the claims or defenses of the representative parties are typical of the

18  claims or defenses of the class; and

19     (4)    the representative parties will fairly and adequately protect the

20  interests of the class.

21  Fed. R. Civ. Pro. 23(a); *see also In re Wireless Facilities, Inc.*, 253 F.R.D. at 610.

22     In addition, Plaintiff must establish that one of the factors under Rule 23(b)

23  is met:  (1) there is a risk of inconsistent or unfair adjudication if parties proceed

24  with separate actions; (2) the defendant acted or refused to act on grounds generally

25  applicable to the class, making injunctive or declaratory relief appropriate to the

26  class as a whole; or (3) common questions of law or fact predominate and class

27

28                                           11

1  resolution is superior to other available methods for fair and efficient adjudication

2  of the controversy.  Fed. R. Civ. Pro. 23(b).

3       Here, the Settlement Class satisfies the Rule 23(a) elements of numerosity,

4  commonality, typicality, and adequacy of representation, and additionally satisfies

5  Rule 23(b)(3), as set forth in full below.

6       **A.    Numerosity**

7       To satisfy numerosity, Rule 23(a)(1) requires that the proposed class be "so

8  numerous that joinder of all members is impracticable."  Fed. R. Civ. Pro. 23(a)(1).

9  "Impracticability means difficulty or inconvenience of joinder; the rule does not

10  require impossibility of joinder."  *In re Ashanti Goldfields Secs. Litig.*, No. CV 00

11  0717(DGT), 2004 WL 626810, at *11 (E.D.N.Y. Mar. 30, 2004) (quoting *In re*

12  *Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999)).  Plaintiff need not allege

13  the exact number or identity of class members to satisfy the numerosity

14  requirement.  *See Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 637 (N.D. Cal.

15  2007).

16       Here, the numerosity requirement is clearly satisfied.  Among other things,

17  the Class Members likely number in the thousands, spread geographically

18  throughout the United States.  *See* First Amended Complaint 19 (Docket Item No.

19  51) ("FAC"), ¶¶ 5, 34.  This overwhelming number of class members demonstrates

20  that joinder is both difficult and impracticable.  *See, e.g., Trief v. Dun & Bradstreet*

21  *Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (requirement satisfied when joinder

22  "would needlessly complicate and hinder efficient resolution of the litigation.");

23  *Korn v. Franchard Corp.*, 456 F. 2d 1206, 1209-10 (2d Cir. 1992) (finding joinder

24  impracticable for a class of 212 members).  Accordingly, Rule 23(a)(1)'s

25  numerosity requirement is readily satisfied.

26

27

28                                                                        12

1    **B.    Commonality**

2        Next, Rule 23(a)(2) requires a showing of "questions of law or fact common

3    to the Class."  Fed. R. Civ. Pro. 23(a)(2).  "Commonality focuses on the

4    relationship of common facts and legal issues among class members."  *Dukes v.*

5    *Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007).   It can be established by

6    showing "that the class is united by a common interest."  *Blackie v. Barrack*, 524

7    F.2d 895, 901 (9th Cir. 1975) (holding "slight differences in class members'

8    positions" will not defeat commonality).  The existence of "shared legal issues"

9    will satisfy the commonality requirement.  *Dukes*, 509 F.3d 1177.  Because the test

10   of commonality is qualitative rather than quantitative, "one significant issue

11   common to the class may be sufficient to warrant certification."  *Id.*

12       The common and unifying allegations in the action are, *inter alia*, whether

13   Defendant made false and/or misleading misrepresentations and/or omissions on

14   the product packaging and advertising with respect to the actual pomegranate juice

15   content of the WGP, whether Defendant's representations and/or omissions have

16   misled or are likely to mislead the Class into believing that the WGP contains more

17   pomegranate juice than it actually does, and whether Defendant violated the UCL,

18   FAL, and CLRA.  See FAC, ¶ 35.  Consumers who purchased the WGP can

19   establish their claims via uniform and common proof, namely, that Plaintiff and the

20    Class did not receive any disclosure on the product packaging that the product

21   contain very little, if any, pomegranate juice.  Courts have consistently certified

22   classes in cases involving a course of conduct arising out of a common nucleus of

23   operative facts.  *See Browder v. Fleetwood Enters., Inc.*, No. ED CV 07-01180

24   SGL, 2008 WL 4384245, at *6 (C.D. Cal. 2008) (holding that commonality existed

25   because defendant was alleged to have given the same defective instruction to all

26   class members); *Colesberry v. Ruiz Food Products, Inc.*, No. CV F 04-5516, 2006

27

28                                          13

1   WL 1875444, at *3 (E.D. Cal. June 30, 2006) ("Common questions of fact and law

2   are present where the defendants have engaged in standardized conduct towards

3   members of the proposed class.").  Because this case challenges Welch's packaging

4   and advertising that contained the same representations and/or omissions, this is

5   sufficient to demonstrate commonality under Rule 23(a)(2).

6       **C.   Typicality**

7       In determining whether typicality is met, courts consider whether the injury

8   allegedly suffered by the named plaintiffs and the rest of the class resulted from the

9   same alleged common practice.  *See Dukes*, 509 F.3d at 1184.  The focus is "'on

10  the defendants' conduct and plaintiff's legal theory,' not the injury caused to the

11  plaintiff."  *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal.

12  2005) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

13  To establish typicality, the representative's claim simply must be "reasonably

14  co-extensive with those of absent class members."  *Hanlon v. Chrysler*, 150 F.3d

15  1011, 1020 (9th Cir. 1998); *see also Dukes*, 509 F.3d at 1184 ("Some degree of

16  individuality is to be expected in all cases, but that specificity does not necessarily

17  defeat typicality."); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488

18  n.8 (C.D. Cal. 2006) (holding that typicality existed where plaintiffs alleged that

19  defendant committed a single overarching fraudulent scheme, noting that variation

20  among class grievances does not defeat typicality).

21      Here, Plaintiff's claims arise from the same factual matrix and are based on

22  the same legal theory as the claims of the absent class members.  The claims of

23  Plaintiff and the other class members all arise from the "same course of events" -

24  that is, Welch's representations and/or omissions concerning the pomegranate juice

25  content of the product - and each class member would have been required to make

26  the same legal arguments to prove Welch's liability.  Plaintiff and the Settlement

27

28                                        14

1   Class allege they have suffered or are likely to suffer the same type of injury as a

2   result of purchasing the Product.  See FAC ¶ 36.  Plaintiff's claims are thus typical

3   of the claims of the members of the class.

4        **D.      Fair and Adequate Representation**

5        Rule 23(a)(4) requires the court to ensure that "the representative parties will

6   fairly and adequately protect the interests of the class."  This factor requires "(1)

7   that the proposed representative Plaintiff does not have conflicts of interest with the

8   proposed class, and (2) that Plaintiff is represented by qualified and competent

9   counsel."  *Dukes*, 509 F.3d at 1185.

10       Under this standard, Plaintiff will fairly and adequately protect the interests

11  of the class.  Plaintiff's interests are fully aligned with the class members, and no

12  conflict of interest exists.  Additionally, Plaintiff is represented by competent

13  counsel who have outstanding records of accomplishments in the prosecution of

14  complex consumer class actions in both state and federal courts.  *See* Declaration of

15  Jordan L. Lurie In Support of Joint Motion for Preliminary Approval, ¶ 12 and

16  Exh. A; *see also* FAC  ¶¶ 37-38.

17       **E.      Common Questions of Law and Fact Predominate Over Any**

18               **Questions Affecting Only Individual Members, And A Class**

19               **Action Is Superior To Other Methods of Adjudication**

20       Plaintiffs seek certification of a settlement Class under Rule 23(b)(3), in that

21  "the actual interests of the parties can be served best by settling their difference in a

22  single action."  *Hanlon*, 150 F.3d at 1022 (quoting 7A C.A. Wright, A.R Miller, &

23  M. Kane, Federal Practice & Procedure §1777 (2d ed. 1986).  There are two

24  fundamental conditions to certification under Rule 23(b)(3): (1) questions of law or

25  fact common to the members of the class predominate over any questions affecting

26  only individual members; and (2) a class action is superior to other available

27

28                                    15

1   methods for the fair and efficient adjudication of the controversy.  Fed. R Civ. P.

2   23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

3   *Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022;

4   *Wiener*, 255 F.R.D. at 668.  Rule 23(b)(3) encompasses those cases "in which a

5   class action would achieve economies of time, effort, and expense, and promote. ..

6   uniformity of decision as to persons similarly situated, without sacrificing

7   procedural fairness or bringing about other undesirable results."  *Amchem*, 521 U.S.

8   at 615 (citations omitted and alterations in original); *Wiener*, 255 F.RD. at 668.

9           **1.      Common Questions Predominate Over Individual Issues**

10          The Rule 23 (b)(3) predominance inquiry "tests whether proposed classes are

11  sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521

12  U.S. at 623.  "Predominance is a test readily met in certain cases alleging consumer

13  . . . fraud . . . ."  *Id*.  "When common questions present a significant aspect of the

14  case and they can be resolved for all members of the class in a single adjudication,

15  there is clear justification for handling the dispute on a representative rather than on

16  an individual basis."  Fed. Prac. & Proc., § 1778; *Gen. Tel. Co. of Southwest v.*

17  *Falcon*, 457 U.S. 147, 157 n.l3 (1982) (noting that commonality and typicality tend

18  to merge).  The predominance requirement is satisfied here. As discussed above,

19  Plaintiff alleges that Class Members are entitled to the same legal remedies based

20  on the same alleged wrongdoing: exposure to the same alleged misrepresentation.

21  The central issues for every claimant are whether Defendant violated the UCL,

22  FAL, and CLRA by making false and/or misleading misrepresentations and/or

23  omissions on the product packaging, which misled or were likely to mislead the

24  Class into believing that the product contained more pomegranate juice than it

25  actually did.  Under these circumstances, there is sufficient basis to find that the

26  requirements of Rule 23(b)(3) are present.  *See Weiner*, 255 F.R.D. at 669

27

28                                              **16**

1  (predominance satisfied when alleged misrepresentation of product's health

2  benefits were displayed on every package); *Hanlon*, 150 F.3d at 1022.

3       **2.**     **A Class Action is the Superior Method to Settle This**

4                       **Controversy**

5       Rule 23(b)(3) sets forth the relevant factors for determining whether a class

6  action is superior to other available methods for the fair and efficient adjudication

7  of the controversy.  These factors include: (i) the class members' interest in

8  individually controlling separate actions; (ii) the extent and nature of any litigation

9  concerning the controversy already begun by or against class members; (iii) the

10  desirability or undesirability of concentrating the litigation of the claims in the

11  particular forum; and (iv) the likely difficulties in managing a class action.  Fed. R.

12  Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92

13  (9th Cir. 2001).  "[C]onsideration of these factors requires the court to focus on the

14  efficiency and economy elements of the class action so that cases allowed under

15  subdivision (b)(3) are those that can be adjudicated most profitably on a

16  representative basis."  *Zinser*, 253 F.3d at 1190 (citations omitted); *see also*

17  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the

18  superiority requirement may be satisfied where granting class certification "will

19  reduce litigation costs and promote greater efficiency").

20       Application of the Rule 23(b)(3) "superiority" factors shows that a class

21  action is the preferred procedure for this Settlement.  The amount of damage to

22  which an individual class member would be entitled is not large.  *Zinser*, 253 F.3d

23  at 1191; *Wiener*, 255 F.R.D. at 671.  It is neither economically feasible, nor

24  judicially efficient, for the tens of thousands of Class Members to pursue their

25  claims against Defendant on an individual basis.  *Deposit Guar. Nat'l Bank v.*

26  *Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023; *Vasquez v.*

27

28

**17**

1   *Superior Court*, 4 Cal. 3d 800, 808 (1971).  Additionally, the fact of settlement

2   eliminates any potential difficulties in managing the trial of this action as a class

3   action.  When "confronted with a request for settlement-only class certification, a

4   district court need not inquire whether the case, if tried, would present intractable

5   management problems . . . for the proposal is that there be no trial."  *Amchem*, 521

6   U.S. at 620.

7   **V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS**

8   **       WARRANTED**

9   　　　　After the Court makes a determination that the proposed class satisfies the

10  criteria set forth in Rule 23(a) and at least one of the subsections of Rule 23(b), it

11  must make a "preliminary determination of the fairness, reasonableness, and

12  adequacy of the settlement Terms."  Fed. Judicial Ctr., Manual for Complex

13  Litigation § 21.632 (4th ed. 2004).  Plaintiff and Welch's request that this Court

14  preliminarily approve the Stipulation of Settlement not only because public policy

15  favors the settlement of complex class actions such as this one, but also, as

16  demonstrated herein, because the Stipulation of Settlement has achieved excellent

17  results for the Class.  The settling parties respectfully submit that the proposed

18  settlement is fair, reasonable, and adequate and warrants preliminary approval by

19  this Court.

20  　　　　**A.    Standard for Preliminary Approval of Settlement**

21  　　　　Federal Rule of Civil Procedure 23(e) requires judicial approval for any

22  compromise of claims brought on a class basis.  Approval of a proposed settlement

23  is a matter within the discretion of the district court.  *See, e.g., Class Plaintiffs v.*

24  *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  This discretion should be

25  exercised in the context of a public policy which strongly favors the pretrial

26  settlement of class action lawsuits.  *Id.*; *Officers for Justice v. Civil Serv. Comm'n*,

27

28

**18**

1   688 F.2d 615, 625 (9th Cir. 1982) ("Voluntary conciliation and settlement are the

2   preferred means of dispute resolution . . . ."); *Van Bronkhorst v. Safeco Corp.*, 529

3   F.2d 943, 950 (9th Cir. 1976); *In re NVIDIA Corp. Deriv. Litig.*, No.

4   C-06-06110-SBA, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008).  As the

5   Court in *Nelson v. Bennett* explained:

6   　　　[T]he suggestion that there is no federal policy to encourage settlement

7   　　　truly borders on the absurd.  Not only have federal courts long

8   　　　recognized the public policy in favor of the settlement of complex

9   　　　securities actions, but the Ninth Circuit in particular has stated:  "It

10   　　　hardly seems necessary to point out that there is an overriding public

11   　　　interest in settling and quieting litigation.  This is particularly true in

12   　　　class action suits . . . which frequently present serious problems of

13   　　　management and expense."  Especially in these days of burgeoning

14   　　　federal litigation, the promotion of settlement is as a practical matter,

15   　　　an absolute necessity.

16   662 F. Supp. 1324, 1334 (E.D. Cal. 1987) (internal citations omitted) (quoting *Van*

17   *Bronkhorst*, 529 F.2d at 950).

18   　　　Beyond this strong judicial policy favoring settlements, "the Court need only

19   conclude that the settlement of the claims on the agreed upon terms is within the

20   range of possible approval."  *In re NVIDIA Corp.*, 2008 WL 5382544, at *2.  In

21   making this determination, the Court evaluates whether the settlement is "fair,

22   reasonable, and adequate," and that it is "not the product of fraud or overreaching

23   by, or collusion between, the negotiating parties."  *Id.* (quoting *Officers for Justice*

24   *v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982).  The court need not

25   "engage in analysis as rigorous as is appropriate for final approval."  Manual for

26   Complex Litigation, § 21.63 commentary, p. 489; *see also Alberto v. GMRI, Inc.*,

27

28                                                     19

1   252 F.R.D. 652, 665 (E.D. Cal. 2008) (stating that the court need do no more than a

2   "cursory review of the terms of the parties' settlement for the purpose of resolving

3   any glaring deficiencies").

4          An evaluation of the costs and benefits of settlement must be tempered by a

5   recognition that any compromise involves concessions of the part of all of the

6   settling parties.  *In re NVIDIA Corp.*, 2008 WL 5382544, at *3.  Indeed, "the very

7   essence of a settlement is compromise, a yielding of absolutes and an abandoning

8   of higher hopes."  *Id.* (quoting *Officers for Justice*, 688 F.2d at 624) (internal

9   quotation marks omitted).  As the Fifth Circuit noted in *Cotton v. Hinton*, 559 F.2d

10  1326, 1330 (5th Cir. 1977): "The trial court should not make a proponent of a

11  proposed settlement justify each term of settlement against a hypothetical or

12  speculative measure of what concessions might have been gained" (internal

13  quotation marks omitted).

14         Applying the foregoing standards in this case, it is respectfully submitted

15  that the proposed settlement between Plaintiff and Welch's should be preliminarily

16  approved.

17  **B.      The Proposed Settlement Is Within the Range of Possible**

18  **         Approval**

19         The proposed settlement here unquestionably falls well within the range of

20  possible approval.  There is no evidence of fraud or collusion, and the settlement is

21  the result of good faith arm's-length bargaining by counsel who are familiar with

22  the issues in the case and the strengths and weaknesses of their client's positions.

23  The settlement fairly reflects concessions by both sides in order to achieve a

24  settlement that is fair and reasonable.  The settlement represents a favorable result

25  against a sophisticated and well-represented defendant.  The settlement terms were

26  presented in summary fashion to the Court at the Rule 16(b) Conference held on

27

28                                             20

1    October 18, 2010.  Following the Rule 16(b), the Parties have continued to

2    negotiate the final details of the settlement, which has culminated in execution of

3    the Stipulation of Settlement.

4         The settlement mandates significant benefits to the Class and to consumers at

5    large, as well as additional *cy pres* relief, on claims that Welch's vigorously

6    disputes.  The settlement will also eliminate the risk that the Class may not prevail

7    on their claims against Welch's at trial or on appeal.

8         The proposed settlement is the result of intensive arm's-length bargaining

9    and was achieved only after more than one and a half years of litigation and

10   difficult negotiations.   Indeed, the settlement was reached only after Class Counsel

11   had engaged in sufficient investigation and discovery. Class Counsel's motion

12   practice and investigation/discovery included: (a) extensive investigation and

13   drafting of class action complaint, and amended pleadings, which included

14   researching of the applicable law with respect to the claims asserted  therein and

15   the potential defenses thereto;  (b) propounding class certification and merits

16   discovery, including  special interrogatories, requests for production of documents,

17   and requests for admissions; (c) reviewing tens of thousands of documents

18   informally and formally produced by Defendant, and otherwise obtained through

19   their investigation; (d) reviewing all the deposition transcripts and expert reports in

20   the *POM Wonderful v. Welch's* case; (e) reviewing the labels, advertisements and

21   promotional materials for the "White Grape Pomegranate" product; (f) reviewing

22   articles regarding the benefits of, and consumer expectation of, pomegranate juice;

23   g) reviewing the filings and following the court proceedings in *Pom Wonderful*

24   *LLC v. Welch Foods, Inc.*, 09-cv-00567, including attendance at trial; (h) drafting a

25   successful opposition to Motion to Dismiss; (i) exchanging Initial Disclosures

26   pursuant to Fed. R. Civ. Pro. 26(a)(1); (j) drafting and negotiating a protective

27

28
                                            21

1   order; (k) meeting and conferring with Defendant's counsel regarding the scope of

2   discovery, the sufficiency of discovery responses and production, the retention of

3   electronic documents during the pendency of the litigation, and the timing of

4   production; (l) drafting and filing class certification motion; (m) engaging in

5   numerous settlement discussions with defense counsel, including drafting

6   settlement proposals.  Lurie Decl. ¶4.

7        In sum, by the time Plaintiff agreed to settle, she and her counsel had

8   adequate information to assess the strengths and weaknesses of her case, and had

9   sufficient grasp of the legal and factual issues in the litigation to make a thorough

10  appraisal of the adequacy of the settlement to provide meaningful relief to the

11  Class.

12       In addition, the issues have been hotly contested by extremely capable

13  counsel on both sides experienced in consumer and class action litigation.  During

14  the course of this litigation and the Parties' settlement discussions, Welch's argued

15  vigorously that it had no liability whatsoever to the Class and that, even in the

16  event liability were established (*e.g.*, by way of the jury verdict in the *POM*

17  *Wonderful v. Welch* case), restitution was not likely to be awarded considering that

18  Class Members actually drank and benefitted from the product and, accordingly,

19  suffered no real injury.  Moreover, Welch's likely would have argued that since the

20  WGP was "line priced," meaning that a 64 ounce bottle of the WGP sold for the

21  same price as Welch's other 100% white grape juice and white grape blends, both

22  at wholesale and retail, there was never any "pomegranate premium," charged to

23  Class Members as a component of the price of the WGP.  Welch's also would have

24  argued that it lost money on the product, such that there are no profits to disgorge.

25  In addition, Although Plaintiff believes she has meritorious claims against Welch's,

26  Welch's and its respective experts could be expected to offer sharply conflicting

27

28                                              22

1   testimony and opinions on the liability and damage issues presented by this case if

2   it were to be tried.  Welch's would also emphasize that the people who can meet the

3   proof requirements will receive a full refund under the settlement, which was likely

4   the best result at trial.  Other benefits flow to Class Members with little or no proof

5   of eligibility, which would not be an available remedy at trial.

6        In addition to the risks faced before and at trial, and appeal of any judgment

7   or verdict in Plaintiff's favor, Plaintiff faced the further cost of litigating this

8   dispute which would only increase as trial approaches.  As recently noted by Judge

9   Armstrong:

10          Had Federal Plaintiffs continued to litigate, they would have

11          faced a host of potential risks and costs, including the potential for

12          successful attacks on the pleadings, high costs associated with lengthy

13          and complex litigation, potential loss on summary judgment, and risks

14          and costs associated with trial, should the case progress that far.

15          Indeed, even a favorable judgment at trial may face post-trial

16          motions and even if liability was established, the amount of

17          recoverable damages is uncertain.  The Settlement eliminates these

18          and other risks of continued litigation, including the very real risk of

19          no recovery after several years of litigation.

20   *In re NVIDIA Corp.*, 2008 WL 5382544, at *3.  The same observations ring true

21   here.

22        Thus, the settlement will provide meaningful and clearly defined relief to the

23   Class and others in place of the uncertainty of continued litigation and trial.  Given

24   the uncertainty and substantial expense of going forward with trial against Welch's,

25   it is the informed opinion of Plaintiff's experienced counsel that the proposed

26   settlement is eminently fair, reasonable and adequate and warrants judicial

27

28                                            23

1   approval.  Lurie Decl.  ¶¶ 3-4; *see Nat'l Rural Telecomms. Coop. v. DIRECTV,*

2   *Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight" is accorded to the

3   recommendation of counsel, who are most closely acquainted with the facts of the

4   underlying litigation."); *Hughes v. Microsoft Corp.*, No. C98-1646C, C93-0178C,

5   2001 WL 34089697, at *6 (W.D. Wash. 2001) (stating that when appraising the

6   fairness of the proposed settlement, the opinion of experienced and competent

7   counsel in favoring a settlement is entitled to significant weight).  The Class was

8   represented by counsel with extensive experience in litigating class actions, and the

9   Settlement was reached after extensive analysis by Plaintiff's Counsel of the

10   applicable law and facts, including the review of voluminous pages of documents

11   produced by Welch's and other pre-trial analysis.  Lurie Decl. ¶¶ 3-5,12.

12        Accordingly, the Parties request preliminary approval of the Settlement

13   Agreement.

14   **VI.    THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE**

15   **        AND CLASS NOTICE SHOULD BE APPROVED**

16        Plaintiff requests that this Court approve the proposed form of notice which

17   will advise Class Members of the pendency of this action, the proposed settlement,

18   and Class Counsel's application for a fee and expense award and for an incentive

19   compensation award to Class Representative.  Plaintiff and Welch's agree that the

20   form of notice is fair and adequate under the circumstances.

21        The threshold requirement concerning the sufficiency of class notice is

22   whether the means employed to distribute the notice is reasonably calculated to

23   apprise the class of the pendency of the action, of the proposed settlement, and of

24   the Class members' rights to opt out or object.  *Eisen v. Carlisle & Jacquelin*, 417

25   U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

26   306, 315 (1950).  The mechanics of the notice process are best left to the discretion

27

28                                          24

1  of the court, subject only to the broad "reasonableness" standards imposed by due

2  process.  In this Circuit, it has long been the case that a notice of settlement will be

3  adjudged satisfactory if it "generally describes the terms of the settlement in

4  sufficient detail to alert those with adverse viewpoints to investigate and to come

5  forward and be heard."  *Churchill*, 361 F.3d at 575 (citing *Mendoza v. Tucson Sch.*

6  *Dist. No.1*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025 (notice

7  should provide each absent class member with the opportunity to opt-out and

8  individually pursue any remedies that might provide a better opportunity for

9  recovery).

10       The proposed Class Notice satisfies these content requirements.  It provides

11  for the maintenance of a Settlement Website summarizing the case and the terms of

12  the proposed settlement and providing the necessary forms and instructions for

13  Class Members to submit claim forms, opt out of the Class or object to the

14  settlement.  It also provides for Defendant's primary consumer website

15  (www.welchs.com) to direct users to the settlement website on its home page and a

16  toll free number Class Members may use to obtain additional information regarding

17  the Settlement.  In addition, Defendant will send out two Publication Notices – one

18  following preliminary approval and one following final approval – in free-standing

19  inserts in the Sunday editions of newspapers throughout the country, with

20  distribution of at least 20 million for each run.  These Publication Notices will have

21  a brief, straightforward summary of the settlement and will direct Class Members

22  to the Settlement Website for more details and claim forms.

23       The website will include in simple, easy-to-understand language: (1) basic

24  information about the lawsuit; (2) a description of the benefits provided by the

25  settlement; (3) an explanation of how Class Members can obtain settlement

26

27

28                                              25

1 benefits; (4) an explanation of how Class Members can exercise their right to

2 opt-out or object to the settlement; (5) an explanation that any claims

3 against Welch's that could have been litigated in this action will be released if the

4 Class member does not opt out from the Settlement; (6) the names of Class Counsel

5 and information regarding attorneys' fees and expenses, and Plaintiff's incentive

6 award[3]; (7) the Settlement Hearing date; and (8) an explanation of eligibility for

7 appearing at the Settlement Hearing.  Lurie Decl.  ¶¶ 9-10.

8       Collectively, the Class Notice provides Class members with sufficient

9 information to make an informed and intelligent decision about the settlement.  As

10 such, it satisfies the content requirements of Rule 23.  *See In re Compact Disc.*

11 *Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003)

12 ("notice must describe fairly, accurately and neutrally the claims and parties in the

13 litigation entitled to participate, including the right to exclude themselves from the

14 class").

15       Additionally, the proposed dissemination of the Class Notice satisfies all due

16 process requirements.  The Settlement provides that Welch's will provide notice to

17 the Class both after preliminary approval of the Settlement and after final approval

18 of the settlement by the Court.  Because Welch's does not sell the products directly

19 to consumers, Welch's does not have mailing addresses or other contact

20 information for the members of the Class.  Therefore, the Notice Program consists

21

22 ───────────────

23       [3]The Class Notice will also inform Class Members that Plaintiffs' final approval brief and request for attorneys' fees will be filed prior to the objection deadline.  *See*

24 *In re Mercury Interactive Corp. Sec. Litig.*, No. 08-17372, _ F.3d _, 2010 WL 3239460 (9th Cir. Aug. 18, 2010).

25

26

27

28

1   of publishing the Publication Notice in targeted sources that are likely to reach

2   Class Members.

3       In sum, the contents and dissemination of the proposed Class Notice

4   constitutes the best notice practicable under the circumstances and fully complies

5   with the requirements of Rule 23.

6       In addition, counsel for Welch's will timely effect service on the appropriate

7   Federal and State officials of the documents and other information required to be

8   served pursuant to the terms of the Class Action Fairness Act, 28 U.S.C. §1715

9   ("CAFA").

10      The proposed notice plan fully comports with the requirements of Fed. R.

11   Civ. P. 23(c)(2)(A), CAFA, and due process.  The proposed form of the Notice

12   apprises Class Members in a fair and neutral way of the Settlement, as well as their

13   rights with respect to the settlement.

14   **VII.   THE FINAL SETTLEMENT HEARING**

15      Following the approval and entry of the proposed Preliminary Approval

16   Order and notice to Class Members pursuant thereto, the parties will request that

17   this Court conduct a Final Approval  Hearing to determine whether the judgment

18   and order should be entered (1) approving the proposed settlement as fair,

19   reasonable and adequate to the Class; (2) dismissing this action on the merits and

20   with prejudice as against Welch's with respect to the Class; (3) barring Plaintiff

21   and all Class Members from prosecuting, pursuing or litigating any of the Released

22   Claims, as defined in the Stipulation, against Welch's; and (4) awarding Class

23   Counsel's fees and expenses and granting an incentive compensation award to the

24   Class Representative.

25

26

27

28

## VIII.   PROPOSED SCHEDULE OF EVENTS

The Parties request that, should the Court grant this motion for preliminary approval, the Court also set a date for a Final Approval Hearing at which time the Court can determine whether the Agreement is fair, adequate and reasonable.  The Parties propose the following schedule for the Final Fairness Hearing and other relevant dates.  These dates are contingent on the Court granting preliminary approval prior to February 11, 2011.  Should preliminary approval be granted after February 11, 2011, the following dates should be adjusted accordingly:

| | |
|---|---|
| Posting of Settlement Notice on Welch's Website | February 11, 2011 |
| Publication of Notice Coupon In National Newspapers | February 13, 2011 |
| Serving Notice on Appropriate Federal and State Officials | Within 10  days following the filing of Proposed Settlement Agreement |
| Last Day for Filing Objections or Comments to Settlement | March 18, 2011 |
| Last Day for Filing Paper In Support of Request for Attorneys' Fees | March 1, 2011 |
| Last Day for Filing Papers In Response to Objections and In Support of Final Approval of Settlement | March 28, 2011 |
| Final Approval  Hearing | April 11, 2011 |

//

//

IX.    **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that this Court (1) preliminarily approve the terms of the settlement reached by the parties; (2) certify the Settlement Class for the purpose of effectuating the settlement; (3) approve the form and method of notice of the settlement and of the pendency of the litigation to the Class and order that such notice be given; and (4) set a hearing for final approval of the settlement.

Dated: February 7, 2011               **WEISS & LURIE**
                                      Jordan L. Lurie
                                      Zev B. Zysman
                                      Joel E. Elkins


                                      _____/s/ Zev B. Zysman_____
                                          Zev B. Zysman

                                      10940 Wilshire Boulevard, 23rd Floor
                                      Los Angeles, CA 90024
                                      Telephone: (310) 208-2800
                                      Facsimile:   (310) 209-2348
                                      *Attorneys for Plaintiff and*
                                      *the Proposed Class*


Dated: February 7, 2011               **GREENBERG TRAURIG LLP**
                                      Rick L. Shackelford
                                      Daniell K. Newman


                                      __/s/ Rick L. Shackelford (by authorization)__
                                          Rick L. Shackelford

                                      2450 Colorado Avenue, Suite 400E
                                      Santa Monica, CA 90404
                                      (310) 586-7700 Telephone
                                      (310) 586-7800 Facsimile
                                      *Attorneys for Defendant*
                                      *Welch's Foods, Inc.*

# PROOF OF SERVICE

**COUNTY OF LOS ANGELES**   )
                                 )  **ss**
**STATE OF CALIFORNIA**        )

      I am employed in the County of Los Angeles, State of California, I am over the age of 18 and not a party to the within action; my business address is 10940 Wilshire Boulevard, Suite 2300, Los Angeles, California 90024.

      On February 7, 2011, the foregoing document was e-filed in the consolidated case, CV 09-05946 AHM (AGRx) and electronically served on:

> Rick L. Shackelford
> Daniell K. Newman
> GREENBERG TRAURIG LLP
> 2450 Colorado Avenue, Suite 400E
> Santa Monica, CA 90404
> (310) 586-7700 Telephone
> (310) 586-7800 Facsimile
>
> *Attorneys for Defendant Welch's Foods, Inc.*

      The document was additionally served on the following party in the *Courtney* action via U.S. Mail and email on February 7, 2011:

> Harold M Hewell
> HEWELL LAW FIRM
> 105 West F Street, 2nd Floor
> San Diego, CA 92101
>
> Howard Weil Rubinstein
> HOWARD W RUBINSTEIN LAW OFFICE
> 914 Waters Avenue Suite 20
> P O Box 4839
> Aspen, CO 81611
>
> *Attorneys for Plaintiff Seann P. Courtney*

      I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in an affidavit.

      Executed on **February 7, 2011**, at Los Angeles, California 90024.

| | |
|---|---|
|     Zev B. Zysman |     /s/ Zev B. Zysman |
| Type or Print Name | Signature |